# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN F. BRASCH et al., | : | CIVIL ACTION |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| WELLS FARGO BANK, N.A. et al., | : | No. 17-3263 |
| *Defendants*. | : | |

## M E M O R A N D U M

PRATTER, J.                                                                                                                                JULY 31, 2018

When a lending institution loans on the basis of an allegedly fraudulent home appraisal, can the borrowers establish justifiable reliance even when they did not know the value of the appraisal? Plaintiffs John and Marie Brasch believe so, suing Wells Fargo for "inducing" them, on the basis of an inflated home appraisal, to take out loans they cannot repay. However, the Brasches never saw the allegedly fraudulent appraisal, and actually knew the real value of their home was substantially lower than the loans they took out.

To prove their fraud claims, the Brasches must show justifiable reliance on the allegedly fraudulent or deceptive conduct. Because the Court finds that justifiable reliance cannot be demonstrated absent knowledge of the fraudulent appraisal, the Brasches' claims fail as a matter of law. Accordingly, summary judgment is granted in favor of Wells Fargo.

### BACKGROUND

Wells Fargo issued and approved a home equity secured line of credit with a value of up to $250,000 for the Brasches in 2005 and a 30-year mortgage of $252,697.50 in 2006. During this process, Wells Fargo appraised the Brasches' home as having a value of $380,000, which the

1

Brasches claim overvalued their $227,000 home by $153,000. The Brasches were never told of the valuation. At the time, Mr. Brasch (the spouse who actually took out the loan) believed his home was worth somewhere in the range of $200,000.

In the wake of the 2008 housing market collapse, Congress enacted the Home Affordable Refinance Program (HARP) to help borrowers at high risk of defaulting on a mortgage. In 2014, Wells Fargo advertised on the internet for HARP refinancing. Mr. Brasch answered the advertisement and was approved for lower-interest refinance based upon the 2006 appraisal of his home. Mr. Brasch still did not know the value of Wells Fargo's appraisal.

Three years after the HARP loan, and 11 years after the initial mortgages, the Brasches sued Wells Fargo, claiming that Wells Fargo fraudulently misrepresented the market value of the Brasches' home. The Brasches claim $150,000 in damages, alleging that Wells Fargo's use of an incorrect appraisal and property report constituted fraudulent misrepresentation of their property's market value. The Brasches contend that Wells Fargo used this value to induce the Brasches to over-borrow and accuse Wells Fargo of engaging in equity stripping. Equity stripping involves lending unnecessarily large amounts of money, which makes it difficult for the homeowners to refinance or sell their home to pay off the loans. Despite this claim, all parties agree that the Brasches have timely made payments on these loans and Wells Fargo distributed the proceeds of the 2005 and 2006 loans.

**LEGAL STANDARD**

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cty. of*

2

*Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c).

Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

The Brasches' claims arise under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), which generally prohibits fraudulent conduct. Wells Fargo's motion for summary judgment offers two relevant arguments in favor of granting summary judgment on the Brasches' UTPCPL claims. First, the lender claims that the statute of limitations for the alleged fraud of 2005 and 2006 has run because the Brasches filed suit in July 2017. Second, the lender argues that the Brasches are unable to prove justifiable reliance as required for a UTPCPL claim.[1] Because the Court agrees with both arguments, Wells Fargo's motion for summary judgment is granted with respect to the UTPCPL claims.

Although the initial complaint was devoid of any mention of federal law, the Braches alleged in their response to Wells Fargo's motion that Wells Fargo violated the Home Ownership and Equity Protection Act (HOEPA). *See* 15 U.S.C. § 1639. HOEPA was enacted to protect against predatory lenders by requiring disclosure of certain consumer credit terms and prohibiting various misleading practices. *See* 15 U.S.C. §§ 1601(a), 1639. Wells Fargo argues that HOEPA does not apply to the loans at issue, and that the statute of limitations has run. The Court agrees, and grants Wells Fargo's motion for summary judgment with respect to the HOEPA claims as well.

### A. Predatory Lending and the Unfair Trade Practices and Consumer Protection Law

The Brasches accuse Wells Fargo of predatory lending, which they claim violates the UTPCPL. The UTPCPL, in a "catch-all" provision invoked here, prohibits engaging "in any []

---

[1] Wells Fargo also argues that the Brasches are unable to establish damages because the plaintiffs received money from the loan and, at the time of the first loan in 2005, the property had no equity. Given that the Court is granting summary judgment on each of the other two issues, the Court has no occasion to address the merits of this argument.

4

fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 PA. CONS. STAT. § 201-2(4)(xxi). This catch-all provision requires the Brasches to "prove the elements of common-law fraud." *Taggart v. Wells Fargo Home Mortg. Inc.*, No. 10-cv-843, 2010 WL 3769091, at *3 (E.D. Pa. Sep. 27, 2010) (Stengel, J.); *see also Toy v. Metro. Life Ins. Co.*, 863 A.2d 1, 10 (Pa. Super. Ct. 2004) (UTPCPL claims must establish the common law elements of fraud).[2] In Pennsylvania, the elements of fraud are "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Weissberger v. Myers*, 90 A.3d 730, 735 (Pa. Super. Ct. 2014); *see also Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503, 510 (E.D. Pa. 2010) (discussing elements of common-law fraud in the context of a UTPCPL claim).

1. *Justifiable Reliance*

The element in dispute here is justifiable reliance, which requires that one "relied upon the statement or representation as an inducement to his action or injurious change of position." *See Toy v. Metro. Life Ins. Co.*, 863 A.2d 1, 11 (Pa. Super. Ct. 2004); *see also Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 227 (3d Cir. 2008) (finding that the plaintiff had not stated a valid UTPCPL claim because he failed to show justifiable reliance). Justifiable reliance requires one to *actually rely* on the fraudulent conduct. *See Davis v. Bank of Am., N.A.*, No. 13-cv-4396, 2016 U.S. Dist. LEXIS 13333, at *13 (E.D. Pa. Feb. 3, 2016) (citing *Toy v. Metro. Life Ins. Co.*, 928

---

[2] The Brasches also bring a count claiming "fraud" under the UTPCPL. Because the predatory lending claim requires the plaintiff to establish the common law elements of fraud, the underlying conduct of the predatory lending and fraud claims are duplicative. *See Taggart*, 2010 WL 3769091, at *3. Therefore, the Court will discuss both claims as one.

A.2d 186, 201 (Pa. 2007) ("In Pennsylvania, justifiable reliance requires more than mere causation, more than 'reasonable reliance,' and more than 'reliance in fact.'"). For reliance to be considered justifiable, the reliance cannot be "upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Id.* (quoting Restatement (Second) of Torts § 541 (1977)). This fact-specific inquiry necessitates that a plaintiff "is not justified in relying upon the truth of an allegedly fraudulent misrepresentation if he knows it to be false or if its falsity is obvious." *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 207–08 (Pa. 2007) (citing *Merritz v. Circelli*, 64 A.2d 796, 798 (Pa. 1949).

Under the facts presented here, the Brasches are unable to establish justifiable reliance. The Brasches claim that receiving loan proceeds in excess of $500,000 misled them about the value of their property, because the loan was based on a fraudulent appraisal value of $380,000. However, Mr. Brasch testified that Wells Fargo "never mention[ed] the value of [his] house," in 2005 or 2006, nor did Wells Fargo tell him about the appraisal during the refinancing for the HARP loan in 2014. The Brasches did not see the $380,000 appraisal until years later. The fact that Mr. Brasch never saw the allegedly fraudulent appraisal is sufficient alone to show that the Brasches did not justifiably rely on that appraisal. However, Mr. Brasch also admitted that he never even believed the house was worth as much as the amount stated in the appraisal. This knowledge of falsity prevents a finding of justifiable reliance and requires granting summary judgment in favor of defendants on these claims. *See Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 207 (Pa. 2007).

The Brasches argue that their ignorance of the appraisal is irrelevant. They claim that they implicitly relied on the bank to only lend an amount that they could repay, which constitutes

6

justifiable reliance. This argument is tenuous at best. Such an argument would mean that any plaintiff has shown justifiable reliance merely by taking out a loan, and still fails to show a causal connection between the fraudulent act (the appraisal) and the alleged damages. The Brasches have not cited any authority for such a novel proposition, and the Court can scarcely think of how one could be defrauded without inducement. Despite the obvious flaws in this argument, the Court need not reach the merits of such an issue because Mr. Brasch admits that he knew the value of his house was far lower than the allegedly high appraisal (an appraisal he never saw). Therefore, his knowledge of the lower value necessarily bars any implicit justifiable reliance.

2. *Statute of Limitations*

Even if this were not the case, the UTPCPL's statute of limitations is a bar to recovery because the UTPCPL has a six-year statute of limitations. 42 PA. CONS. STAT. § 5527(b). *Faust v. Deutsche Bank Nat'l Tr. Co.*, 353 B.R. 94 (Bankr. E.D. Pa. 2006). The Brasches did not file this case until July 21, 2017, twelve years after the alleged fraud took place. Thus, the statute of limitations for the alleged fraudulent conduct occurring in 2005 and 2006 has run. Although Mr. Brasch argues that the 2014 HARP refinancing "restarts" the clock, there was no fraudulent act at that time, so there can be no restarting of the running of the statute of limitations.

**B. Equity Stripping and the Home Ownership and Equity Protection Act**

In response to Wells Fargo's motion for summary judgment, the Brasches introduce a new legal theory, to which Wells Fargo claims surprise: violation of the Home Ownership and Equity Protection Act (HOEPA), an amendment to the Truth in Lending Act. The Brasches allege that Wells Fargo's deceptive practices violated HOEPA in two ways: (1) by lending without regard to repayment ability and (2) by failing to provide mandatory disclosure

statements. These claims fail for two reasons. First, the Brasches failed to show that the type of loans at issue here are within the scope of HOEPA. Second, the statute of limitations to bring a HOEPA claims has expired.

*1. Failure to Show that Mortgages are High-Cost Mortgages Subject to HOEPA*

First, the Brasches argue that Wells Fargo violated § 1639(h) of HOEPA, which states that "[a] creditor shall not engage in a pattern or practice of extending credit to consumers . . . without regard to the consumers' repayment ability." The Brasches claim that Wells Fargo's "pattern or practice" of extending lines of credit that greatly exceed the value of the home violates this section, because the loans were approved "without regard to the [Brasches'] repayment ability." *See* 15 U.S.C. § 1639(h). Consequently, the inflated loan undermined their ability to build equity in their property. The Brasches cite this provision to demonstrate that the alleged equity stripping is actionable.

Second, the Brasches argue that Wells Fargo failed to provide specific disclosures for high risk mortgages, as HOEPA requires. *See* 15 U.S.C. § 1639(a). High-risk mortgages, defined under 15 U.S.C. § 1602(bb), require the bank to provide disclosures related to the terms and use of loans. These disclosures "assure a meaningful disclosure of credit terms . . . and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. §§ 1601(a); 1639(a). According to the Brasches, whether or not Wells Fargo provided required disclosures for the mortgage remains unknown.

However, these requirements apply only to mortgages described in 15 U.S.C. § 1602(bb). Mortgages under this section, which is titled "high-cost mortgage," are defined as high-interest mortgages or variable-rate mortgages that balloon after a period of time. The Brasches have produced no evidence that the loans at issue qualify as high-cost mortgages as defined under the

8

statute. *See* 15 U.S.C. § 1602(bb). The Brasches, as plaintiffs, have the burden of proof on this issue because it is an element of the prima facie case. Thus, the Brasches' failure to show that these are high cost loans requires the Court to grant summary judgment in favor of the defendants.

### 2. *Statute of Limitations*

Even if the Court were to disregard any issues involving the merits of these claims and the introduction of a novel legal theory at this point in the proceedings, HOEPA's statute of limitations requires that summary judgment be granted. The statute of limitations begins to run on a HOEPA claim on the date the mortgage is closed, and it ends after one year. 15 U.S.C. § 1640(e); *Taggart*, 2010 WL 3769091, at *4; *Foster v. EquiCredit Corp.*, No. 99-cv-6393, 2001 WL 177188, at *2 (E.D. Pa. Jan. 26, 2001) ("The statute of limitations for recovery of damages under [HOEPA] is one year from the time of the transaction.") Accordingly, even if the 2014 HARP refinancing violated HOEPA, the statute of limitations expired in 2015, and the Brasches' HOEPA claims are time-barred. Therefore, summary judgment is granted in favor of Wells Fargo on the Brasches' HOEPA claims because the statute of limitations has expired.

## CONCLUSION

For the foregoing reasons, Wells Fargo's motion for summary judgment is granted. An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE